IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| TABITHA TRIPP, | ) |
|---|---|
| GARY SHEPHERD, | ) |
| CHARLIE HOWE, | ) |
| FELICIA HOLLY, | ) |
| VERA HOLLY, | ) |
| RENEE COOK, | ) |
| ILL. GREEN PARTY, and | ) |
| CANDACE A. DAVIS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 14–cv–0890–MJR–PMF |
| vs. | ) |
| | ) |
| CHARLES W. SCHOLZ, in his official | ) |
| capacity, | ) |
| BRYAN A. SCHNEIDER, | ) |
| BETTY J. COFFRIN, | ) |
| HAROLD D. BYERS, | ) |
| CASSANDRA B. WATSON, | ) |
| WILLIAM M. McGUFFAGE, | ) |
| ERNEST L. GOWEN, and | ) |
| RUPERT T. BORGSMILLER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

REAGAN, District Judge:

Though the Illinois Green Party was a statewide "established" party until 2010, it fell below the minimum threshold in that year's election, and is now, in the vast majority of Illinois districts, considered a "new" political party. The 90-day petition circulation period for placing a candidate from a "new" party on this year's November 4 General Election ballot opened on March 25, 2014.

1

Plaintiffs Tripp and Shepherd[1]—Green Party members who collected signatures to be state representatives in the 118th and 115th Representative Districts, respectively—have mounted a constitutional challenge to two requirements (separately and because of their cumulative effect) of the Illinois Electoral Code: (1) that "new" party candidates gather signatures from at minimum 5% of the district's eligible voters, and (2) that each page of a petition be notarized. Plaintiffs filed their respective Statements of Candidacy and accompanying signatures on June 23, 2014. Neither managed to meet the 5% minimum, and on June 30, their nominations were targeted via Objector's Petitions.

On July 10, Plaintiffs raised constitutional objections in Illinois State Officers Electoral Board ("ISOEB") proceedings, but on July 28 the ISOEB Hearing Examiner (finding that the ISOEB lacks the power to make a constitutional ruling, and that neither candidate recommended that neither candidate appear on the upcoming General Election ballot. (Doc. 16-1, Doc. 16-2). According to the Complaint, county election authorities will certify the ballot today (August 22, 2014), the same day the ISOEB has scheduled a hearing on the Examiner's recommendation.

This lawsuit was not filed until August 13, 2014—almost five months after the petition circulation period commenced, and nine days before the ISOEB hearing. The case was randomly reassigned to the undersigned district judge upon the August 14 recusal of Judge J. Phil Gilbert. Though the Complaint contained a plea for injunctive

---

[1] The other Plaintiffs are voters seeking an opportunity to vote for Tripp and Shepherd, and the Green Party itself.

relief, no motion for Preliminary Injunction was filed until August 18—a mere four days before the ISOEB's hearing and ballot certification.

Defendants had yet to appear, and the Court notified Plaintiffs (whose motion for Preliminary Injunction was neither styled as, nor met the requirements for, a Temporary Restraining Order) that September 2, 2014, was the earliest available setting on the Court's calendar. The Court further directed Plaintiffs to file a notice when Judge John J. Tharp, Jr., of the Northern District of Illinois ruled on a similar motion in *Summers v. Smart*, No. 14-C-5398, a case brought by prospective Green Party statewide candidates.

Judge Tharp ruled yesterday, denying the *Summers* plaintiffs' motion for a preliminary injunction.[2] As directed, Plaintiffs notified the Court of that ruling. Plaintiffs then moved—at 3:36 p.m. the day before ballot certification and the ISOEB hearing—for "emergency relief" in the form of a delay of ballot certification for the 118th and 115th representative districts. Plaintiffs' motion also asks for an accelerated briefing schedule in advance of a September 2 hearing date. Defendants (who received the instant motion via e-mail, *see* Doc. 20, p. 4) filed an appearance at 4:24 p.m. yesterday, and have not responded to the "Motion for Emergency Relief."

Insofar as their motion requests this Court to "direct the Defendants to delay the certification of the ballot" for the two representative districts, Plaintiffs motion must be DENIED.

---

[2] Judge Tharp's Memorandum Opinion and Order can be found on this docket at Document 19-1.

3

ANALYSIS

Though Plaintiffs' motion does not cite to any fount of authority, the scope of its request to delay a General Election ballot certification most closely tracks a request for a temporary restraining order. Federal Rule 65 controls such requests, and contains strict requirements: a temporary restraining order may be issued without notice to the adverse party only if specific facts (in an affidavit or verified complaint) show that immediate and irreparable injury will result before the adverse party may be heard, and the movant's attorney certifies efforts made to give notice and the reasons it should not be required. FED. R. CIV. P. 65(b)(1). The stringent restrictions imposed on the availability of temporary restraining orders reflect the fact that "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 438–39 (1974)).

With few exceptions (none pertinent here), the circumstances that most often support granting a temporary restraining order are where notice is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing. *Am. Can Co.*, 742 F.3d at 322. Even looking past the stringent requirements of Rule 65(b)(1), a temporary restraining order is only appropriate in exceptional circumstances: the TRO standards are identical to those for a preliminary injunction, *Planned Parenthood of Wisc. v. Van Hollen*, 963 F.Supp.2d

858, 865 (W.D. Wisc. 2013); *Long v. Bd. of Educ., Dist. 128*, 167 F.Supp.2d 988, 990 (N.D. Ill. 2001), an "extraordinary and drastic" remedy that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

To obtain that drastic remedy, a party must meet a threshold showing that: no adequate remedy at law is available, that it will suffer irreparable harm in the absence of an injunction, and that there is some likelihood of success on the merits. *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011). If the movant passes that threshold, the factors are weighed against one another: a court must assess whether the balance of harms favors the movant or whether the harm to the nonmovant or the public is sufficiently weighty that the injunction should be denied. *Id.* The equitable balancing proceeds on a sliding-scale analysis: the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the movant's favor. *Wisc. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014). Courts should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

Here, even ignoring the fact that Plaintiffs did not actually move (much less fulfill the technical requirements) for a temporary restraining order, the balance of the equities weighs against granting the "Emergency Motion." First, notice to Defendants was not impossible. Plaintiffs have had since at least March 2014 to bring their constitutional concerns regarding Illinois ballot procedures to a federal forum. That Plaintiffs waited to sue until nine days before ballot certification (and filed the instant

5

motion *one day* before ballot certification) does not mean notice was impossible, it means they should have sued earlier.

The possibility of notice overlaps with the heavy tipping of the balance of equities in favor of Defendants and the public. In *Nader v. Keith*, cited by Judge Tharp in yesterday's *Summers* Order, the Seventh Circuit held "it would be inequitable to order preliminary relief in a suit filed so gratuitously late in the campaign season." **Nader, 385 F.3d 729, 736 (7th Cir. 2004)**. There, Ralph Nader filed suit against Illinois election officials in late June regarding a November ballot appearance. The public's interest in the stability of the electoral process weighed heavily in the analysis: "By waiting as long as he did to sue…[the Green Party candidate] created a situation in which any remedial order would throw the state's preparations for the election into turmoil." *Nader*, 385 F.3d at 736. Here, Plaintiffs waited even longer. Granting an August 21 motion to delay August 22 ballot certification would likewise create turmoil (both here and in any future cases that would follow a similar path). Further, Plaintiffs' failure to conform to Rule 65 means there is even less counterweight to the public interest: there are no facts (in either an affidavit or the Complaint, *see* FED. R. CIV. P. 65(b)(1)(A)) that would lead the Court to conclude that waiting until after the September 2 hearing to (potentially) alter the Illinois ballot would be any less disruptive to the electoral process than would a delay that went into effect today.

In short, Plaintiffs' eleventh-hour "emergency" motion suffers from deficiencies entirely attributable to Plaintiffs themselves. As Judge Tharp reasoned yesterday:

> Rather than bring a timely lawsuit to enjoin the provisions that the Plaintiffs allege to be unconstitutional in themselves and collectively …

the plaintiffs waited to sue until the only possible preliminary injunctive remedy was to place them on the ballot notwithstanding the allegedly overburdensome ballot access requirements (most of which they complied with).³

(Doc. 19-1, p. 16). Plaintiffs' delays in filing suit and seeking injunctive relief via the instant "Motion for Emergency Relief" similarly shift the balance of the equities firmly in favor of Defendants and the public. *See Nader*, 385 F.3d at 735 ("We cannot micromanage the regulation of the electoral process to the degree (the plaintiff) seeks).

## CONCLUSION

Plaintiffs' "Motion for Emergency Relief" (Doc. 20), generously analyzed as a motion for a Temporary Restraining Order, is **GRANTED IN PART** only insofar as it asks for an accelerated briefing schedule on Plaintiffs' Motion for Preliminary Injunction. Defendants shall respond to the Motion for Preliminary Injunction on or before August 26, 2014; Plaintiffs shall reply on or before August 29. A hearing on the motion is SET for September 2, 2014, at 10:00 a.m. in the East St. Louis Courthouse.

The "Motion for Emergency Relief" is **DENIED** in all other respects.

IT IS SO ORDERED.
DATE: August 22, 2014               s/ *Michael J. Reagan*
                                    MICHAEL J. REAGAN
                                    United States District Judge

---

³ Though the undersigned finds Judge Tharp's reasoning persuasive, this Memorandum and Order is not meant to serve as an opinion on the merits of the pending Motion for Preliminary Injunction. Though there is some overlap between the challenged provision in this case and the *Summers* case, *Summers* deals with more than two ballot requirements, and as such the analysis will not be identical. The undersigned will hear the parties' arguments on September 2 before ruling on the Motion for Preliminary Injunction.